**JS-6**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Mary Pelloni and Ronald Davis;<br><br>Plaintiffs,<br><br>v.<br><br>WE: Women's Entertainment Network;<br>WE: Women's Entertainment LLC;<br>September Films;<br>September Films USA, Inc.; and<br>September Films Limited,<br><br>Defendants. | CV 08-05612-GPS (AGRx)<br>LASC, Case No.: BC370048<br><br>**ORDER REMANDING CASE TO LOS ANGELES COUNTY SUPERIOR COURT** |

On April 25, 2007, Plaintiffs Mary Pelloni and Ronald Davis filed a complaint in the Los Angeles County Superior Court against numerous Defendants, alleging a variety of misdeeds related to their employment as producers on the reality television program "Bridezillas." On August 26, 2008, Defendant Rainbow Media Holdings, LLC ("RMH") filed a Notice of Removal.

Although no cause of action is explicitly based in federal law, RMH argues that

1

several mentions of federal law in the meandering and confusing 96-page complaint establish that state law claims "may be predicated" on federal law violations, (Am. Notice of Removal ¶ 5), and that a reference to "numerous" wage and hour laws *could* refer to federal law. (Am. Notice of Removal ¶ 3).

The Court rejects this argument. Since the Court finds it has no jurisdiction over the matter, and that removal was improper, the Court **REMANDS** the action to the Los Angeles Superior Court.

## I.    BACKGROUND

### A.    Factual Background

Plaintiff Pelloni is a television producer, and in 2004 worked on a project for Defendant September Films, U.S.A. ("September Films")  with the involvement of Defendant WE: Women's Entertainment Network ("WE"). (Compl. ¶¶ 9-14.) WE allegedly instructed September Films to hire Pelloni as an executive producer for its reality television series "Bridezillas." (*Id.* ¶¶  15-16.)  Pelloni then hired Plaintiff Davis to be her senior producer, and Davis independently contracted with September Films.  (*Id.* ¶¶  88-89.)

Plaintiffs allege that, while on this project, September Films' President, Defendant David Green acted "inappropriately" and created a hostile work environment through negative and derogatory comments about women, gays, people with disabilities, and racial and ethnic minorities.  (*Id.* ¶¶ 12-15, 31-34, 92, 124-27.)  Plaintiff Pelloni alleges Green discriminated against her through abusive verbal comments on the basis of her sex and her complaints about sex-based discrimination. (*Id.* at pp. 12-15.)[1]  Pelloni alleges that when

---

[1] The complaint contains several duplicative paragraph numbers.

she complained to WE, they indicated they would resolve the situation and "protect" her. (*Id.* ¶ 24.) However, Plaintiffs allege Green's behavior continued, and worsened. (*Id.* ¶ 25.)

Plaintiffs also allege that both September Films and WE made "misrepresentations" and "false assurances" as to her compensation. Pelloni alleges WE and September Films intentionally underpaid her due to her gender, and her wages were so low as to violate "applicable wage and hour laws and regulations." (*Id.* ¶¶ 35-36, 41-42.) She alleges she was "forced to work in excess of 100 hours a week." (*Id.* ¶ 45.) Plaintiff Davis makes similar allegations. (*Id.* ¶¶ 121, 130.)

Pelloni also alleges that she had several concerns about the legality of transactions engaged in by Green and September Films, including tax evasion, and voiced her concerns. (*Id.* ¶¶ 49, 60). Both plaintiffs later allegedly learned that a show being advertised as a reality program was in fact fictional. (*Id.* ¶ 63.) They allege this behavior was a violation of Racketeer Influenced and Corrupt Organizations Act (RICO) and several California laws, and that, in going along with this assertion, they were forced to participate in perpetrating a fraud on the public. (*Id.* ¶¶ 63, 139-140.)

Plaintiffs allege they objected to this practice. Pelloni and Davis allege WE and September Films in response began a conspiracy to "eliminate" them in 2006. (*Id.* ¶¶ 65-70, 141.) Upon terminating Pelloni and Davis, Plaintiffs allege Defendants falsely told others they quit and spread other rumors about them, damaging their reputation. (*Id.* ¶¶ 73-76, 132-134.) Plaintiff Davis alleges he was also terminated on the basis of his refusal of Defendant Sammy Nourmand's sexual advances, his objection to Defendants' wage and

hour violations, and his national origin as an American.[2] (*Id.* ¶ 130.)

Plaintiffs bring fourteen overlapping causes of action: (1) breach of contract; (2) harassment, discrimination and retaliation; (3) California Fair Employment and Housing Act (FEHA) discrimination claims; (4) harassment and discrimination in violation of public policy; (5) retaliation in violation of public policy; (6) wage and hour law violation; (7) wrongful termination, harassment, and retaliation in violation of public policy; (8) fraud; (9) negligent misrepresentation; (10) defamation, (11) intentional infliction of emotional distress; (12) California Business & Professions Code § 17200 claims for unfair and improper business practices (fraud-related); (13) § 17200 claims for unfair and improper business practices (wage-related); and (14) unjust enrichment. (*Id.* at pp. 64-95.)

Plaintiffs seek several forms of relief, including compensatory and punitive damages, a Court-supervised anti-harassment policy, back wages, attorney's fees, and costs. (*Id.* at pp. 95-98.)

B. Procedural Background

The complaint was filed on April 25, 2007. Defendant Rainbow Media Holdings, LLC ("RMH") did not accept service until August 21, 2008, and then filed a Notice of Removal five days later. Upon reviewing the complaint and notice of removal, the Court ordered RMH to show cause ("OSC") as to why the matter should not be remanded to state court for a lack of subject-matter jurisdiction. RMH argues that removal was proper, since several of the factual allegations mention federal laws, (Am. Notice of Removal ¶ 4), some of the state law claims "may be predicated" on federal law violations, (Am. Notice of

---

[2] Defendant Green is British.

Removal ¶ 5), and a reference to "numerous" wage and hour laws *could* refer to federal law. (Am. Notice of Removal ¶ 3).  RMH also contends that the request for attorney's fees and costs under the federal Fair Labor Standards Act (FLSA) raises a federal question. (Response Br. p. 5.)

On August 27, 2008, the Court ordered RMH to show cause ("OSC") as to why the action should not be remanded.   On September 24, 2008, one day before the Court's hearing on the OSC re: remand, Plaintiff Pelloni moved to remand the action to state court. On September 25, 2008, the Court heard both parties on the matter. Plaintiff's counsel argued the matter should be remanded to state court, and conceded that he could remove all references to federal law from the Complaint without changing the substantive claims he intended to bring on behalf of his clients.

## II.     DISCUSSION

### A.     Legal Standard

Federal courts are courts of limited jurisdiction, and disputes between non-diverse parties generally may be removed to federal court only where a federal question exists. The removal statute is strictly construed against removal jurisdiction and there is a strong presumption against removal with "any doubt" resolved in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992), *cited in Rumsey Indian Rancheria of Wintuun Indians of Cal. v. Dickstein*, No. 2:08-cv-02412, 2008 WL 648451, at *2 (E.D. Cal. Mar. 5, 2008).  While a federal cause of action is not required to establish federal question jurisdiction, *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005)  and *Merrell Dow Pharmaceuticals Inc. v.*

5

*Thompson*, 478 U.S. 804 (1986), make clear that "the absence of a federal private right of action" is relevant evidence in the determination of whether federal question jurisdiction exists. *Grable* at 318 (citing *Merrell Dow*).

State law causes of action can generally give rise to federal question jurisdiction in three situations: where they are completely preempted by federal law, where they raise a substantial federal question, or where they involve a defense of federal preclusion or federal res judicata. *Lippitt v. Raymond James Financial Servs., Inc.*, 340 F.3d 1033, 1042 (9th Cir. 2003). A substantial federal question only exists when the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005).

RMH argues that the complaint, on its face, contains federal claims under RICO and the FLSA. It also argues that the California unfair competition claims raise substantial federal questions.

B.     The Possible RICO Claims

Plaintiffs mention RICO at two points in their rambling complaint, both of which allege that Defendants violated the statute. (Compl. ¶¶ 63; 140.) Taking this one step further, though, RMH concludes that these allegations show that Plaintiffs were "clearly try[ing] to plead the elements" of a RICO claim. (Response Br. p. 9.) At the same time, RMH argues that the complaint "clear[ly] on its face" asserts a claim under RICO. (*Id.*) On close inspection, neither of the two cited sections of the Complaint "clearly" plead a RICO claim. In one section, Plaintiffs allege that Plaintiff Pelloni was concerned about the

6

authenticity of Bridezillas, noting that the "show's appeal was based upon the fact that it was true, real and legitimate." The Complaint notes Pelloni's dispute with Defendant Green over whether to "stage" portions of the show, just as the Complaint includes numerous other disputes between Pelloni and Green. (Compl. ¶¶ 61-62.)

Pelloni then alleges that Defendants violated RICO in their staging of a *different* show than the one she worked on. The key allegation of this portion of the complaint is not the brief mention of RICO, but Pelloni's allegation that her "voicing concern" over the staging of reality programs caused Defendants to begin to "conspire" to terminate her. (Compl. ¶¶ 63-64.) This whole section, and a nearly identical section at ¶ 140, paints Pelloni as a whistle blower and as a more "honest" producer than the Defendants. In no way is this a "clear" attempt to state the elements of a claim under RICO, particularly since many RICO elements are not even referenced or touched upon.

RICO is also mentioned in Plaintiff Davis' allegations about the staging of scenes, the ensuing harm to his reputation, and the fraud against consumers it perpetuated. (Compl. ¶¶ 140-142.) In laying out his allegations, Plaintiff lists several laws he claims Defendants knew they were violating. (Compl. ¶ 141). Like Pelloni, he also alleges that when he raised concerns about these issues, Defendants began a campaign to oust him. (Compl. ¶¶ 139, 141). These are not RICO claims, and there is nothing incompatible with these allegations and state law UCL and retaliation claims. There is nothing that raises a substantial federal question.

The mere factual allegation that Defendants violated RICO is not enough to raise a federal question unless ruling on Defendants claims requires a determination of

7

whether there was such a violation. Like much of Plaintiffs' factual allegations, the mentions of RICO are largely irrelevant to their actual claims for relief and do not present substantial federal questions to be resolved. Simply mentioning a federal statute in a complaint is not enough to create federal question jurisdiction.

C. <u>The Wage and Hour Claims</u>

RMH does not argue that Plaintiffs' wage and hour claims explicitly assert claims under federal law. Plaintiffs allege violations of the California Labor Code and other unspecified laws ("various sections and laws" or "numerous laws") (Compl. ¶¶ 189-191). However, in their prayer for relief, plaintiffs state they are seeking attorneys' fees and penalties under the FLSA, 29 U.S.C. § 216. (Compl. Prayer for Relief ¶¶ 13-14).

In arguing that this prayer for relief creates federal question jurisdiction, RMH confuses jurisdiction with a decision on the merits. In their complaint, Plaintiffs' seek several other remedies that the court has no legal authority to order (e.g., a court-monitored anti-harassment policy). (Compl. Prayer for Relief ¶ 6.) If there is no underlying FLSA claim properly asserted, then Plaintiffs will not be awarded FLSA damages; the fact that it was included in the prayer for relief does not change the nature of the claims and the federal questions they do or do not present.

RMH only cites one case, from another circuit, that supports its theory that the inclusion of a federal statutory remedy in a prayer for relief converts an otherwise ambiguous claim into a federal one. In *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 680 (5th Cir. 2001), the court summarily concluded that a plaintiff's age discrimination complaint brought under Texas law stated a federal question because plaintiff sought back pay and liquidated damages, which were only available under the

8

ADEA, and not the state law analogue.

*Medina* is hardly persuasive, as even the Fifth Circuit has explicitly distinguished it on this point, and its logic has been rejected by the Ninth Circuit.  In *Bernhard v. Whitney Nat. Bank*, the Fifth Circuit noted it had "distinguished [its] holding in *Medina* and [] determined that a request for attorneys' fees, even if allowable under federal but not state law, does not in itself present federal question jurisdiction."  523 F.3d 546, 552 (5th Cir. 2008), *citing In re Hot-Hed, Inc.,* 477 F.3d 320, 324 (5th Cir. 2007).  There, the court pointed to two differences between *Medina* and the *Hot-Hed* case.  In *Medina*, back pay and liquidated damages were sought as "substantive relief under a specified federal statute." 523 F.3d at 552, *citing* 477 F.3d at 325.  In *Hot-Hed*, the plaintiff had only sought attorneys' fees and costs without citing any specific statute.  *Id.*  Whether the combination of FLSA penalties and attorney's fees and costs are closer to *Medina* or *Hot-Hed* is unclear.  However, the aphorism invoked by the Fifth Circuit in *Bernhard* is telling: "A request for attorney's fees cannot be a basis for federal jurisdiction.  A contrary holding would allow the proverbial tail to wag the dog."  *Id.* (internal citations omitted).

Fortunately, the Ninth Circuit has provided clearer guidance on the issue. Like the Fifth Circuit, it has held that "A request for attorney's fees cannot be a basis for federal jurisdiction."  *Carter v. Health Net of California, Inc.*, 374 F.3d 830, 834 (9th Cir. 2004).  In noting this, though, the court suggested that remedies can *never* be the basis for federal-question jurisdiction, noting "[t]he valid exercise of federal question jurisdiction therefore depend[s] upon the substantive claims raised. . . . If the district court lacked subject matter jurisdiction over the petition, it could not have exercised

9

jurisdiction based on the request for fees." *Id.*

Although RMH does not explicitly assert it, the best argument in its favor would be a sort of reverse incorporation of FLSA into the substantive claims. Since it was unclear whether FLSA claims were being brought in the substantive claims, the mention of FLSA in the prayer for could suggest there were indeed federal claims being brought. However, given the policy of the Ninth Circuit to construe doubt *against* removal, the context of the generally discombobulated complaint, and the representation of counsel, the Court does not indulge this assumption.

### D.  The State Unfair Competition Claims

RMH argues that Plaintiffs' two claims under California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200 et seq., must reasonably be construed as pleading violations of the FLSA and RICO, and thus raise substantial federal questions.

Section 17200 defines unfair competition as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." RMH's argues that since Plaintiffs' UCL claims do "not cite any specific law that was violated other than Section 17200 itself," they must be relying on RICO and FLSA violations as the "unlawful" practices that support their two Section 17200 claims. (Def.'s Br. 11.)

This logic has been squarely rejected by the Ninth Circuit. In *Lippitt v. Raymond James Financial Services*, 340 F.3d 1033 (9th Cir. 2003), the plaintiff brought an action alleging deceptive stock sales practices under § 17200. Defendants sought to remove, saying that plaintiff would "have to rely on a violation of the Exchange Act [or] an

10

1  infraction of an NYSE rule or regulation to bring a UCL claim." 340 F.3d at 1043.  The
2  court rejected this argument, noting that, under California law, to prevail on a UCL
3  claim, a plaintiff "merely has to allege that Defendants' conduct was either unfair or
4  fraudulent," not that some independent law was broken.  *Id.*
5  
6  Plaintiffs allege Defendants manipulated and deceived the market and viewers.
7  Ruling on this question does not require deciding any significant federal question, RICO
8  or otherwise.  These allegations are entirely distinguishable from cases cited by RMH in
9  which the state law claim required a court to find whether federal bankruptcy or antitrust
10 violations occurred. (Def.'s Br. 13.)
11 
12 In their UCL claim based on labor violations, the Plaintiffs explicitly list violations
13 of the California Labor Code. (Compl. at p. 89.)  The UCL claim can thus be decided
14 entirely on the basis of state law questions, and in no way requires a court to determine
15 whether Defendants violated the FLSA, as RMH suggests.  The only possible support
16 comes from Plaintiffs' aforementioned request for FLSA attorney's fees.
17 
18 Given the narrow judicial construction of  "substantial federal question"
19 jurisdiction, the mere fact that the UCL claims *could* be derivative of FLSA or RICO
20 claims does not establish jurisdiction.  As the Second Circuit has noted, "[w]here a
21 federal issue is present as only one of multiple theories that could support a particular
22 claim. . . this is insufficient to create federal jurisdiction."  *Broder v. Cablevision Sys.*
23 *Corp.*, 418 F.3d 187, 194 (2d Cir. 2005).
24 
25 While this Court, having granted remand, has no power to order it, it does
26 suggest to the Superior Court that Plaintiffs be compelled to amend the Complaint so
27 that it complies with the requirements of California law. See, e.g., California Code of
28

11

Civil Procedure section 425.10. As it is now constructed, the Complaint is a confusing and almost unintelligible "hodgepodge" of repetitive, evidentiary and irrelevant allegations.

### III.  CONCLUSION

Because the complaint fails to raise substantial questions of federal law, the action is **REMANDED** to the Los Angeles County Superior Court. Each party is to bear responsibility for its own attorney's fees.

**IT IS SO ORDERED.**

Dated this _5th__ day of October 2008,    *GEORGE P. SCHIAVELLI*
_____
GEORGE P. SCHIAVELLI
UNITED STATES DISTRICT JUDGE